JOHN W. S. COCHRANE *vs.* ROBERT W. LITTLE, and
    MARY E. LITTLE, administrators with the will
    annexed, of JESSE KORNS.

*Appeal — Action against Attorney-at-Law — Sufficiency of
    Declaration—Evidence—Instruction.*

An appeal will not be dismissed for the reason that the exceptions
    were not prepared and signed within the time required by the
    rule of Court, it appearing that such delay was attributable mainly
    to the non-agreement of the Judges, and was not caused by any
    neglect or default of the appellant.

In an action against an attorney-at-law to recover damages for
    giving improper and unskilful advice, it is sufficient if the decla-
    ration charges that the defendant was retained or employed to
    advise the plaintiffs' testator "as to his legal responsibility and lia-
    bility as surety upon a certain bond," in a certain equity proceeding
    referred to, the bond being set out in full, and that he did not
    give proper, intelligent, and legal advice in a proper and skilful
    manner; but, on the contrary, gave him improper, unskilful,
    ignorant, and negligent advice, (stating the advice given;) that
    the plaintiffs' testator relying upon the counsel and advice of the
    defendant, acted thereon, and that by reason thereof he was
    greatly damaged, &c.

In such case the testimony of other lawyers is admissible to show
    that in their opinion, the advice given by the defendant to his
    client, was not such as a prudent, careful lawyer, of ordinary
    capacity and intelligence, would or ought to have given under
    the facts and circumstances proved by other witnesses in the
    case.

In such case the Court properly refused to allow a witness to
    answer the question whether or not the plaintiffs' testator knew
    that "a surety, who paid money for his principal, could collect
    it from the principal after having paid it, as such question could
    have elicited nothing more than a mere inference or an opinion
    as to the legal knowledge of the testator in respect to the facts
    of the case.

The Court erred in refusing to instruct the jury that if they believed·from the testimony that the plaintiffs' testator paid the money mentioned, and executed the release given in evidence, for the purpose of relieving his son-in-law, Price, from prosecution, and himself from worry and trouble, and not by reason of any advice given him by the defendant, then the plaintiffs were not entitled to recover; there being testimony tending to support the hypothesis of the prayer.

APPEAL from the Circuit Court for Garrett County.

The case is stated in the opinion of the Court.

*First and Second Exceptions,* sufficiently stated in the opinion of the Court.

*Third Exception.*—The defendant called Mr. Landwehr, a competent witness, who testified that he had known Mr. Korns in his life-time very well; that he had been the partner of his father, the administrator of his father's estate, and was the witness'. business adviser for many years, and was at his place of business almost. daily. And then propounded to said witness the following question:

"State whether or not you know of your own knowledge whether or not Mr. Korns knew that if a surety, who paid money for his principal, could collect it from the principal after having paid it?" But the plaintiffs, by their counsel, objected to the asking of the said question, and by a divided Court, (Judge SYESTER ruling that it was admissible, and Judge HOFFMAN that it was not,) it was ruled inadmissible, and the Court would not permit said question to be propounded to the witness nor answered by him. To this ruling the defendant excepted.

*Fourth Exception.*—The plaintiffs offered three prayers, the first and second of which the Court rejected, and in. lieu thereof gave the following instruction:

Cochrane *vs.* Little.

If the jury find from the evidence in this case that the plaintiffs' intestate, Jesse Korns, became surety for William Price and Austin A. Wilson on the bond read in evidence, and that afterwards judgments were obtained in the Circuit Court for Alleghany County against the parties to the said bond; and that, at the time of entering of the said judgments, the said William Price was utterly insolvent, and is still insolvent, but that the said Wilson was and still is solvent and fully able to pay and satisfy the said judgments. And further find that the said Korns then applied to and retained the defendant as his attorney and counsellor as to his liabilities and rights as such surety on the said bond. And further find that, at the time of such retainer and application, the defendant was an attorney-at-law, admitted to practice in the said Court where the said judgments were of record; and that being retained by the said Korns for the purpose above mentioned, the defendant, in respect to the liabilities and rights of the said Korns under the law as such surety, advised him that he was responsible for the one-half of the money represented in and by the said judgments; and that he could not avoid losing the one-half of the said sum of money; and also advised him to pay the one-half of the said sum of money, and to execute and deliver to the said Austin A. Wilson the release read in evidence. And also further find that the said Korns acted upon the said advice, and in pursuance thereof paid the one-half of the said money, and executed and delivered the release read in evidence, then the plaintiffs are entitled to recover, provided the jury further find that the advice given to and acted upon by the said Korns was not such advice as an attorney of ordinary skill, prudence and intelligence would or ought to have given.

The plaintiffs' third prayer in respect of the measure of damages was conceded.

The defendant offered the five following prayers:

1. That if the jury find from the evidence that there was a controversy between Austin A. Wilson and Mr. Korns, as to who should pay the amount of money misappropriated by Price, and that it was agreed or compromised between them that each should pay one-half, and that Korns did pay the one-half and signed the release given in evidence, in accordance with said agreement or compromise, and not by reason of any advice which may have been given to him by the defendant in regard to his legal liability, then the plaintiffs are not entitled to recover in this action.

2. That if the jury believe from the testimony that Mr. Korns paid the said sum of money mentioned in the testimony, and signed the release given in evidence for the purpose of relieving his son-in-law, Price, from prosecution, and also to relieve himself from worry and trouble, and not by reason of any advice given him by defendant, then the plaintiffs are not entitled to recover in this action.

3. That the plaintiffs cannot recover in this action, unless they shall prove, to the satisfaction of the jury, that the plaintiffs' testator executed the release in this case in ignorance of his legal rights, and in consequence of the advice of the defendant, and without being moved thereto by other causes and reasons.

4. That if the jury believe that after the money was paid by Mr. Korns, and after the release was signed by him, as read in evidence, and afterward, with full knowledge as to his legal liability, Mr. Korns was satisfied, and ratified the said payment of money and the signing of the said release, then the plaintiffs can not recover in in this action.

5. That if the jury find from the evidence that after the payment of the money, and the execution of the release in this case, the plaintiffs' testator stated that he had paid the money for which this suit is brought, not

because he was legally liable to pay it, but to ease his mind, or for any other reason sufficient to himself, then they may find that the plaintiffs' testator ratified the said release, and if they so find, the plaintiffs can not recover in this action.

The foregoing prayers, as offered by the defendant, were rejected by the Court, except the first prayer, which was altered by the Court, and granted as altered, and is as follows:

That if the jury find from the evidence that there was a controversy between Austin A. Wilson and Mr. Korns as to who should pay the amount of money misappropriated by Price, and that it was agreed or compromised between them that each should pay one-half, and that Korns did pay the one-half and signed the release given in evidence, in accordance with said agreement or compromise, and was not influenced to any degree in making the said payment, and in executing the said release read in evidence, by any advice which the jury may find was given him by the defendant, in respect to his rights and liabilities under the law, as surety on the said bond read in evidence, then the plaintiffs can not recover.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and McSHERRY, J.

*Henry H. Keedy,* for the appellant.

*Will S. Bridendolph,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

There is a motion to dismiss this appeal, but we are of opinion, upon the facts disclosed, that it ought not to prevail. The ground of the motion is, that the ex-

ceptions were not prepared and signed within the time required by the Rule of Court. The rule referred to requires exceptions to be prepared and signed during the sittings of the term at which the trial is had, or within such extended time as the Court may allow. The trial was had at the May Term of the Circuit Court, 1889, and the verdict was rendered on the 16th and the judgment thereon on the 21st of May, 1889. The exceptions, while bearing date the 16th of May, were not in fact signed until the 22d of June, 1889, though it is shown that the defendant's attorney prepared bills of exception and submitted them to the two Judges who sat at the trial, the day after the verdict was rendered, and during the sittings of the Court. The attorney for the plaintiffs also prepared bills of exception and presented them to the Judges, containing such evidence and presenting the case in such manner, as he deemed proper, and the delay in settling and signing the exceptions now before us grew out of a disagreement between the Judges, upon contentions of counsel, as to what parts of the evidence should be set out in the exceptions. While it was perfectly proper that the counsel for the appellees should insist that the bills of exception should be properly drawn, so as to present correctly and fairly the rulings of the trial Court to the Court of Appeals, yet he clearly had no right to take the matter out of the hands of the counsel of the appellant, and insist that an exception prepared by himself should be signed by the Judges, rather than exceptions prepared and presented by the party taking the exceptions. It is the business of the Judges to see that their rulings are properly presented by the exceptions, and that the bills of exception are properly prepared and presented by the party taking the exceptions. The Statute of Westminster 2, (13 Ed. 1, St. 1, C. 31,) which provides for the taking of exceptions, enacts, that "when

one that is impleaded before any of the Justices, doth allege *an exception,* praying that the Justices will allow it, which if they will not allow, if *he that alleged the exception do write the same exception, and require that the Justices will put to it their seals for a witness, the Justices shall so do; and if one will not, another of the Company shall.''* There seems to have been repeated efforts, on the part of the appellant, to have settled and signed the exceptions; and the delay seems to have been attributable mainly to the non-agreement of the Judges ; and that being so, the maxim applies—*actus curiæ neminem gravabit*—an act of the Court shall prejudice no man. *Broom, Leg. Max.,* 87, and cases there cited. A party should not be deprived of his valuable right of appeal, except where the right has been lost by his own neglect' or default. The motion to dismiss must be overruled.

The action is one in case, brought against an attorney-at-law, the present appellant, for what is alleged to have been improper, unskilful, ignorant and negligent advice given to the testator of the plaintiffs, whereby damage is alleged to have been sustained. Korns, the testator, was surety on the joint and several bond of Price and Wilson, trustees appointed by a decree for the sale of real estate;—Price being the son-in-law of Korns. The property was sold, and Price, one of the trustees, misappropriated a portion of the proceeds of sale, and suits were brought upon the bond, by parties entitled, for the money thus misappropriated by Price. Korns, the surety, applied to the defendant, an attorney-at-law, for counsel and advice as to his liabilities and rights as surety on the bond, and it is in respect to the advice given by the defendant that this action is brought.

There was a demurrer to the declaration, and that was overruled; and the first question presented on the rulings of the Court below is, whether there was error committed in overruling the demurrer ?

The declaration charges that the defendant was retained or employed as an attorney by Korns, the plaintiffs' testator, to advise him "as to his legal responsibility and liability as surety upon a certain bond," in a certain equity proceedings referred to; and the bond is set out in full.   It is then alleged that parties entitled to receive the trust funds that had come to the hands of Price and Wilson, the trustees and principals in the bond, had instituted suits upon the bond, and recovered judgments thereon against the principals and the surety in the bond ; and that the defendant, having accepted the retainer or employment, for a compensation to be paid by Korns, in violation of his duty and the obligations imposed upon him by the employment, "did not nor would give said Korns proper, intelligent and legal advice, in a proper, skilful and diligent manner, but, on the contrary thereof, advised and counselled said Korns in an improper, unskilful, ignorant and negligent manner," that is to say, that he, Korns, was primarily responsible with Price and Wilson to the parties who had recovered judgments on the bond, and that said parties could force payment of the whole amount recovered of him, Korns ; and, in case of payment by him, he would have the right to collect *only* one-half of the judgments from Wilson, and the other half from Price. That the defendant further advised Korns to pay said one-half of the amount recovered on the bond, on condition that Wilson would pay the other half thereof, and that, upon payment of such one-half by Wilson, Korns, the surety, should execute a release to Wilson, of all claim by Korns for and on account of the money paid by him, as surety, in discharge of the judgments.  It is then alleged, that Korns, relying upon the counsel and advice of the defendant, and believing that his liabilities and legal rights were as stated by the defendant, paid the one-half of the judgments, and executed, under

hand and seal, the release to Wilson, who paid the other half of the judgments; and that, at the time of the rendition of the judgments, Wilson was owner of large and valuable real estate, upon which the judgments were valid liens, sufficient to pay and satisfy said judgments in full; but that Price was a non-resident of the State and insolvent. It is further alleged, that by reason of the advice and counsel of the defendant in the premises, Korns was greatly damaged, &c.

The declaration is certainly inartificially drawn, but we are of opinion that it sets forth facts sufficient to constitute a right of action. It alleges the employment, the wrongful and unskilful advice, and the consequent damage resulting therefrom.

It is argued that the breach of duty alleged is larger and more comprehensive than the terms of the employment will warrant. But, without stopping to place a critical construction upon the terms of the employment as alleged, it is sufficient that it is alleged that the defendant, under the employment, assumed to and did advise, both as to the legal liability, and the rights and remedies of the client, and that the latter acted upon that advice, supposing it to be correct. Having so advised, and induced the action of the client in accordance with that advice, the defendant cannot relieve himself of responsibility upon the ground that his advice was not confined within the strict limits of the terms of the original retainer, as alleged in the declaration.

Apart from any mere special or technical objections, the declaration would seem to contain all the averments essential to entitle the plaintiffs to maintain their action. This is best shown by a brief statement of the principles upon which the action is maintainable. It is now well settled by many decisions of Courts of high authority, both of England and of this country, that every client employing an attorney has a right to the exercise,

on the part of the attorney, of ordinary care and diligence in the execution of the business intrusted to him, and to a fair average degree of professional skill and knowledge; and if the attorney has not as much of these qualities as he ought to possess, and which, by holding himself out for employment he impliedly represents himself as possessing, or if, having them, he has neglected to employ them, the law makes him responsible for the loss or damage which has accrued to his client from their deficiency or failure of application. Or, as said by Lord Chancellor COTTENHAM, in delivering the opinion in the case of *Hart vs. Frame,* 6 *Cl. & Fin.,* 193, 209, a client who has employed an attorney has a right to his diligence, his knowledge, and his skill; and whether he had not so much of these qualities as he was bound to have, or having them, neglected to employ them, the law properly makes him liable for the loss which has accrued to his employer. And in another part of the same opinion the learned Chancellor said: "Professional men, possessed of a reasonable portion of information and skill, according to the duties they undertake to perform, and exercising what they so possess with reasonable care and diligence in the affairs of their employers, certainly ought not to be held liable for errors in judgment, whether in matters of law or discretion. Every case, therefore, ought to depend upon its own peculiar circumstances; and when an injury has been sustained which could not have arisen except from the want of such reasonable skill and diligence, or the absence of the employment of either on the part of the attorney, the law holds him liable. In undertaking the client's business, he undertakes for the existence and for the due employment of these qualities, and receives the price of them. Such is the principle of the law of England, and that of Scotland does not vary from it." In this case, if the defendant gave the advice alleged in

the declaration, which, as a fact, is admitted by the demurrer, and which advice induced the making of the release by Korns to Wilson, the only solvent principal obligor in the bond, whereby all claim for reimbursement for the money paid by the surety was relinquished, such advice would certainly be subject to the charge imputed to it of being founded in the want of ordinary skill, or the want of reasonable care and diligence, on the part of the defendant. *Stannard vs. Ullithorne*, 10 *Bing.*, 491. The Court below was clearly right in overruling the demurrer.

After the demurrer was overruled, the case proceeded to trial, upon the plea of not guilty by the defendant. In the course of the trial several exceptions were taken by the defendant to rulings of the Court. The first two of these were taken to the admissibility of the testimony of lawyers, examined by the plaintiffs, for the purpose of proving to the jury, that, in their opinion, the advice given by the defendant to Korns, under the facts and circumstances proved by other witnesses in the case, was not such as a prudent, careful lawyer, of ordinary capacity and intelligence, would have given, or ought to have given. As we understand it, this was not an attempt on the part of the plaintiffs to prove to the jury by the lawyers, that the abstract principle involved in the advice given by the defendant was not law, for that would have been an usurpation of the functions of the Court; but simply that the advice, in view of all the circumstances and conditions under which it was given, was not such as a prudent, careful lawyer, of ordinary capacity, would have given. Such testimony, in this class of cases, is allowed, as furnishing aid to the jury, in considering the question of negligence or want of skill. There are many cases in which such testimony has been received, but it is not deemed necessary to refer to more than *Godefroy vs. Dalton*, 6 *Bing.*, 460; *Hun-*

*ter vs. Caldwell,* 10 *Q. B.,* 69; *Swinfen vs. Chelmsford,* 5 *Hurl. & N.,* 890, 897. There was therefore no error in the rulings on these exceptions.

The ruling on the third exception (by a divided Court) discloses no error for reversal. The proffered testimony was excluded, and we think properly so. The question to the witness, to which objection was taken, could have elicited nothing more than a mere inference or an opinion, as to the special legal knowledge of Korns, in respect to the facts of this case.

The fourth exception was taken to the rulings of the Court on the prayers offered, at the conclusion of the evidence, by plaintiffs and defendant. The plaintiffs offered three prayers and the defendant five.

In an action of this character against an attorney, it is the duty of the Court to instruct the jury for what species or degree of negligence or want of skill the defendant is properly answerable, and what duty is imposed upon him by law, and leave them to determine, upon all the facts and circumstances of the case, whether the defendant has performed his duty, and if not, whether the neglect or want of skill was of a character or degree such as to render him liable, according to the definitions furnished by the instructions of the Court. *Hunter vs. Caldwell,* 10 *Q. B.,* 82; *Hatch vs. Lewis,* 1 *Fost. & F.,* 467.

In lieu of the first and second prayers of the plaintiffs, the Court formulated and granted an instruction of its own; and while not in all respects as specific or definite in stating the principles of the defendant's liability as could be desired, there is no such error apparent as would require a reversal on this instruction. The third prayer of the plaintiff was conceded, and is not before us for review. The first prayer of the defendant was slightly modified by the Court, and as modified granted instead of the first prayer. In this we find no error. The second,

third, fourth and fifth prayers of the defendant were all rejected; and we perceive no error in the rejection of any of these prayers, except the second. In the rejection of the second prayer we think there was error. There was testimony tending to support the hypothesis of the prayer; and if from that testimony the jury could have found that Korns paid the money, and executed the release to Wilson, for the purpose of relieving his son-in-law, Price, from prosecution, and also to relieve himself from worry and trouble, *and not by reason of any advice given him by the defendant,* clearly, there could be no ground for recovery in this action. This prayer, therefore, should have been granted. The declarations of Korns referred to in the fifth prayer, if found by the jury, would strongly tend to support the second prayer; but there is no question of ratification properly in the case, as attempted to be raised by the fourth and fifth prayers of the defendant.

It follows that the judgment of the Court below must be reversed and a new trial ordered.

*Judgment reversed, and*
*new trial awarded.*