## 51940. BERMAN v. RUBIN.

STOLZ, Judge.

This suit for legal malpractice arose from the actions of attorney Rubin in negotiating a property settlement for Dr. Berman relating to the latter's divorce. As executed, the portions of the settlement pertinent to this appeal read as follows: "(a) At the present time, the Husband earns approximately [a stipulated amount]. To the extent

that in any one year, the Husband shall earn in excess of this said sum, the amount of child support *per child* for that year *and* alimony for the wife for that year shall be increased by 15% of such increase . . . (b) nothing herein contained shall permit the amount of child support per child to exceed $8,000 for any 1 year, nor shall any amount of alimony to the wife exceed $16,000 . . ." (Emphasis supplied.) The record shows that Dr. Berman read this agreement, initialed each page and signed his name at the end.

In a subsequent contempt hearing, the trial court judge construed the agreement to require payment of 15% of such increased earnings to each of his three children and 15% to his wife (an aggregate of 60% of his excess earnings). The trial court's order holding Dr. Berman in contempt was affirmed in *Berman v. Berman,* 231 Ga. 723 (204 SE2d 124).

Subsequent to this construction, Dr. Berman sued Mr. Rubin for misrepresentation and malpractice. As to Count 1, alleging negligent misrepresentation of the settlement, the trial court found that Rubin's actions merely constituted interpretation of a legal document later construed to the contrary by an appellate court. As to Count 2 of Berman's complaint, alleging Rubin's failure to properly advise him, the trial court found that the plaintiff had actual knowledge of the information allegedly withheld. The trial court entered summary judgment in Rubin's favor on both counts. The thrust of this appeal is Berman's contention that he signed the agreement only upon the assurances of Rubin, his attorney, that the additional payments would total only 15% of his earnings in excess of that sum upon which the settlement was based.[1] *Held:*

This particular legal malpractice claim is for Rubin's negligence in representing to Berman the contents of the child support and alimony provisions of the property

---

[1]Apparently, the appellant has abandoned his appeal on Count 2 of the complaint, since it has been argued neither in his brief nor during oral argument. *O'Kelley v. Hayes,* 132 Ga. App. 134 (207 SE2d 641).

agreement. The initial requirement for establishing liability is that there be a duty; this arises from the attorney-client relationship itself. *Lewis v. Foy,* 189 Ga. 596, 598 (6 SE2d 788); *Republic Mortg. Corp. v. Beasley,* 117 Ga. App. 303 (3) (160 SE2d 429); *O'Kelley v. Skinner, Wilson & Beals,* 132 Ga. App. 792 (2) (209 SE2d 242). As to particular examples, see generally *Arey v. Davis,* 233 Ga. 951 (213 SE2d 837) (retained counsel); State v. Goode, 84 S. D. 369 (171 NW2d 733) (court-appointed counsel); Young v. United States, 346 F2d 793 (D. C. Cir.) (legal aid society counsel); American Employers' Ins. Co. v. Goble Aircraft Specialties, Inc., 205 Misc. 1066 (131 NYS2d 393) (insurance company's counsel). Once this relationship existed, a duty devolved upon Rubin, as Berman's attorney, "to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 98 Cal. Rptr. 837 (491 P2d 421). For other formulations of this standard, see Hodges v. Carter, 239 N. C. 517, 520 (80 SE2d 144, 146) ("ordinary care and diligence"); Glenn v. Haynes, 191 Va. 574, 581 (66 SE2d 509) ("reasonable degree of care and skill"); Ward v. Arnold, 52 Wash. 2d 581, 584 (328 P2d 164) ("reasonable amount of skill and knowledge").

"An attorney is not bound to extraordinary diligence. He is bound to *reasonable* skill and diligence, and the *skill* has reference to the character of the business he undertakes to do." *Cox v. Sullivan,* 7 Ga. 144, 148 (50 AD 386). Thus, while the standard of care required of an attorney remains constant, its application may vary. *O'Barr v. Alexander,* 37 Ga. 195. Two important considerations in particularizing this rather general standard in a given case are the number of options available to the attorney and the amount of time which he has to consider them.[2] As to this, see Comment, Attorney

---

[2]For example, the tactical decisions made during the course of litigation require, by their nature, that the attorney be given a great deal of discretion. See Cook v. Irion, 409 SW2d 475 (Tex. Civ. App.), holding that the

Malpractice, 63 Colum. L. Rev. 1292, 1301 and cits.; J. Wade, The Attorney's Liability for Negligence, 12 Vand. L. Rev. 755, 765 and cits.

Although he is not an insurer of the documents he drafts,[3] the attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, such as to approve a marketable title or draft a will, he then fails to comply with prescribed statutory formalities or to effectuate the intent of the parties. See, e.g., *Lilly v. Boyd,* 72 Ga. 83 (1) (title examination); Theobald v. Byers, 193 Cal. App. 2d 147 (13 Cal. Rptr. 864) (failure to register a chattel mortgage); Ward v. Arnold, 52 Wash. 2d 581, supra (advice to wife that a will for her husband was not necessary); Slade v. Harris, 105 Conn. 436 (135 A 570) (failure to include intended covenant not to compete in a contract); McCullough v. Sullivan, 102 N. J. L. 381 (132 A 102) (failure to state true consideration in chattel mortgage where prescribed by statute); Stein v. Kremer, 112 NYS 1087 (employment contract intended for definite period written so as to be revocable at will).

Likewise, ignorance of basic, well-established and unambiguous principles of law has been held to be a breach of duty towards the client in the following situations: permitting a devisee to witness a will (Goldberg v. Bosworth, 29 Misc. 2d 1057 (215 NYS2d 849)[4]; filing a chattel mortgage in the wrong county (Hampel-Lawson Mercantile Co. v. Poe, 169 Ark. 840 (277 SW 29)); advising a co-principal that he would not be jointly and severally liable for the total amount of his

---

particular local situation (in that case, the possible jury composition) is significant in determining the reasonableness of a decision not to join possible defendants. See also Hill v. Mynatt, 59 SW 163 (Tenn. Ch. App.) as to choice of venue for an action.

[3]Lucas v. Hamm, 56 Cal2d 583, 591 (364 P2d 685, 15 Cal. Rptr. 821), cert. den., 368 U. S. 987; Babbitt v. Bumpus, 73 Mich. 331 (41 NW 417).

[4]See Biakanja v. Irving, 49 Cal. 2d 647 (320 P2d 16) (beneficiary may have standing to sue).

bond (Cochrane v. Little, 71 Md. 323 (18 A 698)). However, this question arises only when the law is fundamental; unless the law is so well settled, clear, and widely recognized, an attorney acting in good faith and to the best of his knowledge will be insulated from liability for adverse results. See Hodges v. Carter, 80 SE2d 144, supra; Lucas v. Hamm, 364 P2d 685, supra, n. 3. Res ipsa loquitur is simply not applicable to suits for legal malpractice. See Olson v. North, 276 Ill. App. 457.

In malpractice actions against attorneys, as is the case against other professionals, it is essential that competent evidence be presented as to the acceptability of particular conduct. "Attorneys are very properly held to the same rule of liability for want of professional skill and diligence in practice, and for erroneous or negligent advice to those who employ them, as are physicians and surgeons, and other persons who hold themselves out to the world as possessing skill and qualifications in their respective trades or professions." Citizens' Loan, Fund & Savings Assn. v. Friedley, 123 Ind. 143, 145 (23 NE 1075). Accord, Theobald v. Byers, 13 Cal. Rptr. 864, supra; Slade v. Harris, 135 A. 570, supra; Cook v. Irion, 409 SW2d 475, supra, n. 2. Hence, except in clear and palpable cases (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice. See Dorf v. Relles, 355 F2d 488 (7th Cir.); Olson v. North, 276 Ill. App. 457, supra; Brown v. Gitlin, 19 Ill. App. 3d 1018 (313 NE2d 180); Sanders v. Smith, 83 N. M. 706 (496 P2d 1102); Walters v. Hastings, 84 N. M. 101 (500 P2d 186). Compare Central Cab Co. v. Clarke, 259 Md. 542 (270 A2d 662) (not required where counsel failed to notify client of termination of employment in time to avoid default).

The reason for this requirement is simply that the jury cannot rationally apply a general statement of the standard of care unless it is aware of what the competent lawyer would have done under similar circumstances. Nor can the jury be permitted to speculate about what the "professional custom" is. Competent evidence as to the

"professional custom," in a given situation is required in malpractice actions against other professionals. See, e.g., *Washington v. City of Columbus,* 136 Ga. App. 682 (222 SE2d 583) (physician); Stallcup v. Coscarart, 79 Ariz. 42 (282 P2d 791) (dentist); Paxton v. County of Alameda, 119 Cal. App. 2d 393 (259 P2d 934) (architect); Tremblay v. Kimball, 107 Me. 53 (77 A 405) (pharmacist). Consistency demands a similar standard for attorneys. Of course, the fact that the defendant has followed customary procedures will not always insulate him from liability. "While custom provides an important indication of what constitutes reasonable care and what is negligent, it is not dispositive of the question . . ." Gleason v. Title Guarantee Co., 300 F2d 813 (5th Cir.).

Although it would otherwise be a jury question as to whether or not defendant Rubin had breached his duty towards Dr. Berman (*Venable v. Block,* 138 Ga. App. 215 (4)), we do not reach that issue in this case. The record affirmatively shows that Rubin's actions were not the cause of the alleged injury to appellant Berman.

The agreement in this case is not ambiguous, nor is it technical or laced with "legal jargon." Appellant Berman admits that an initial draft of the agreement was unsatisfactory to him, that the draft was changed, that he read the changes, that he initialed each and every page, and that he placed his signature on the final page. There are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby. See, e.g., *Ga. Mut. Ins. Co. v. Meadors,* 138 Ga. App. 486; *State Hwy. Dept. v. Raines,* 129 Ga. App. 123, 128 (199 SE2d 96); *Lewis v. Foy,* 189 Ga. 596, supra. This rule has particular force when the party is well educated and laboring under no disabilities. To hold otherwise is to create the potential for malpractice litigation in every contract dispute.

Our decision should not be read to state or imply that an attorney may not be held responsible for his negligent draftsmanship whenever the client can or does read the document. Indeed, where the document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client

read what was drafted. This holding is simply that when the document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie.

Appellant Berman having failed to show that Mr. Rubin's actions, and not his own, were the cause of his alleged injury, the grant of summary judgment to defendant Rubin was not error. Although the basis for our decision was not urged below, "where the judgment of the trial court is proper and legal for any reason it will be affirmed . . ." *Turner v. Baggett Transportation,* 128 Ga. App. 801, 806 (198 SE2d 412).

*Judgment affirmed. Bell, C. J., and Clark, J., concur.*

ARGUED MARCH 8, 1976 — DECIDED MAY 13, 1976 — REHEARING DENIED JUNE 9, 1976 —

*Custer, Smith & Manning, Lawrence B. Custer,* for appellant.

*Neely, Freeman & Hawkins, Paul M. Hawkins, Andrew M. Scherffius,* for appellee.

ON MOTION FOR REHEARING.

In his motion for rehearing, the appellant urges that "[t]his decision, if allowed to stand, will allow one's own counsel intentionally to misrepresent a document and escape liability . . ." However, the counts of the appellant's complaint do not allege an intentional or fraudulent misrepresentation and the record is bare of any evidence or inference thereof. The appellant may neither extend the facts of his case nor enlarge upon his cause of action by means of a petition for rehearing.

In every tort action, causation must be established. Where, as here, there is an intervening factor which breaks that chain of causation leading from defendant to plaintiff, there can be no recovery. In this case the appellant's ability to read and comprehend, together with his failure to do so, constitute that intervening cause.

*Motion for rehearing denied.*